IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARNOLD ROTH, et al. ) | |
| ) | |
| v. ) | Civil Action No.: 1:11-cv-01377 (RCL) |
| ) | |
| ISLAMIC REPUBLIC OF IRAN, et al. ) | |
| ) | |
| _____) | |

**PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT OF CLAIM FOR DAMAGES**

COME NOW the Plaintiffs, by and through their undersigned counsel, and respectfully request the Court to enter Default Judgment on behalf of the Plaintiffs Arnold Roth, Frimet Roth, the Estate of Malka Chana Roth, Haya-Elisheva Roth, Pesia Roth, Rivka Roth Rappaport, Zvi Nehemia Roth, Shaya Elazar Roth and Pinchas Moshe Roth (collectively "Roth Plaintiffs") commensurate with the damages evidence presented herein pursuant to the private cause of action found in 28 U.S.C. § 1605A(c).

**PROCEDURAL HISTORY**

On April 21, 2014, the Clerk of Court entered default against the Islamic Republic of Iran and the Iranian Ministry of Information and Security, ("hereinafter the Iranian Defendants").[1] On May 27, 2014, Plaintiffs filed a Motion to Enter Default Judgment as to liability of the Iranian Defendants, requesting that the Court take judicial notice of the findings of fact and

---

[1] Plaintiffs have also sued the Syrian Arab Republic and Syrian Air Force Intelligence for their role as a state sponsor of the terrorist attack, the subject of this action, pursuant to 28 U.S.C. § 1605A. Because of the lack of diplomatic relations with Syria at this time, Plaintiffs have been unable to achieve service via diplomatic means pursuant to 28 U.S.C. § 1608 (a)(4). See D.E. 17 and D.E. 23. According to the State Department, that status remains unchanged. However, counsel for Plaintiffs has recently learned that DHL has begun to again deliver via international courier to Damascus, Syria. Accordingly, Plaintiff are again attempting service on the Syrian Defendants via DHL in accordance with 28 U.S.C. §1608(a)(3).

1

conclusions of law made in the related case of *Greenbaum v. Islamic Republic of Iran*, 873 F. Supp. 2d 232 (D.D.C. 2006).  The Plaintiffs in this matter are tragically similarly situated to their counterparts in *Greenbaum.*  Malka Chana Roth, an American citizen[2], was murdered in the August 9, 2001 suicide bombing carried out by Hamas, a Foreign Terrorist Organization (hereinafter "FTO"), at the Sbarro pizza restaurant located in Jerusalem, Israel ("Sbarro Bombing"), the same terrorist attack which resulted in the claims underlying the *Greenbaum* action. In addition, the remaining Plaintiffs in this action are the family members of Malka Chana Roth and are similarly situated to the Plaintiffs in the *Greenbaum* action who were the near relatives of those injured or killed in the Sbarro Bombing.  The Iranian Defendants in this action are the same defendants as those named in the *Greenbaum* matter.  On May 19, 2006, this Court received testimony and other evidence regarding the liability of the Iranian Defendants from the Greenbaum Plaintiffs in a bench trial.  The Iranian Defendants were found liable for actively providing material support to Hamas, the FTO which carried out the Sbarro Bombing.  Accordingly, as this Court has already made findings as to the liability of the Iranian Defendants for carrying out the Sbarro Bombing, the Plaintiffs moved for the Court to enter default judgment as to the liability of the Iranian Defendants.  *See* D.E. 25.[3]

      The Roth Plaintiffs now present evidence as to their individual damages and loss in further support of the Motion for Default Judgment, and request that the Court enter an Order that (1) adopts the Findings of Fact and Conclusions of Law that were filed in *Greenbaum*; (2) finds liability of the Iranian Defendants for actively providing material support to Hamas, the FTO which carried out the Sbarro Bombing; and (3) makes findings as to the individual damages

---

[2] *See* Report of Birth of an American Citizen Abroad attached hereto and incorporated herein.

[3] Plaintiffs herein incorporate Plaintiffs' Motion for Default Judgment as to Liability (D.E. 25) as if fully set forth herein.

suffered by each of the Roth Plaintiffs for the murder of their daughter and sister and award default judgment in an amount determined by the Court to each of them.

## I. THE PLAINTIFFS ARE ENTITLED TO DAMAGES PURSUANT TO 28 U.S.C. § 1605A(c).

The Roth Plaintiffs are each entitled to damages against Iran because (1) they are either immediate family members of Malka Chana Roth, being the parents and siblings of the decedent or (2) they are the representatives of the Estate of the decedent, Malka Chana Roth.  In addition, each of them is entitled to an award of punitive damages against Iran, under 28 U.S.C. § 1605A(c), for its sponsorship of HAMAS and this heinous act of murder.  In order for a plaintiff to receive damages, the plaintiff must show that her injuries were "reasonably certain" to occur, that is, more likely to occur than not, as a result of the state sponsor of terror's conduct.  *Salazar v. Islamic Republic of Iran,* 370 F. Supp. 2d 105, 115–16 (D.D.C. 2005) (quoting *Hill v. Republic of Iraq,* 328 F.3d 680, 681 (D.C. Cir. 2003)) (internal quotations omitted).  In the present case, the Defendant's act of supporting Hamas, an infamous and murderous terrorist organization, inevitably resulted in the August 9, 2001 suicide bombing of the Sbarro restaurant in Jerusalem, Israel.  The murder of 15-year-old Malka Chana Roth, a bright young school girl having pizza with her best friend at a well-known restaurant in Jerusalem, was a reasonably foreseeable outcome of the decision of Iran to support HAMAS and its terrorist activities.

### A. Compensatory Solatium Damages

Malka Chana Roth's parents, Arnold Roth and Frimet Roth, and Malka's siblings, Haya-Elisheva Roth, Pesia Roth, Rivka Roth Rappaport, Zvi Nehemia Roth, Shaya Elazar Roth and Pinchas Moshe Roth, are each entitled to solatium damages. Damages for solatium are to compensate for "the mental anguish, bereavement[,] and grief that those with a close personal

relationship to a decedent experience as the result of the decedent's death, as well as the harm caused by the loss of the decedent['s] society and comfort." *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 85 (D.D.C. 2010) (citing *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009)). The Court has in previous decisions on behalf of American victims of Iranian and other state sponsored terrorism established a standard for solatium damages under the FSIA. The general rule of the Court is that parents of deceased victims should each receive a baseline award of $5 million in damages, and siblings should each receive a baseline award of $2.5 million in damages. *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 269 (D.D.C. 2006).

These amounts may fluctuate from the baselines if there are aggravating circumstances, such as a "general feeling of permanent loss or change caused by decedent's absence,"b*Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79 (D.D.C. 2010) (quoting *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 31 (D.D.C. 1998)), or other "circumstances that appreciably worsen a claimant's pain and suffering." *Murphy*, 740 F. Supp. 2d at 79 (quoting *Greenbaum v. Islamic Republic of Iran*, 451 F. Supp. 2d 90, 108 (D.D.C. 2006)). Aggravating circumstances allow the Court considerable discretion to increase a plaintiff's damages by substantial amounts. *See Valore* 700 F. Supp. 2d at 86 (solatium damages increased by 25% due to aggravating circumstances); *Greenbaum* 451 F. Supp. 2d at 108 (solatium damages increased by $1 million due to aggravating circumstances). In *Wultz v. Islamic Republic of Iran*, the court increased the plaintiff's baseline award from $5 million to $7 million because the plaintiff directly witnessed his son's body impacted by shrapnel, and also later suffered Post-Traumatic Stress Disorder ("PTSD"). 864 F. Supp. 2d 24, 40 (D.D.C. 2012). There are similar aggravating circumstances in this case which justify an upward departure from the conventional baseline in the solatium

damages calculation for each of the surviving parents and each of the siblings of Malka Chana Roth.

1. <u>Arnold Roth</u>

In the present case, Malka Roth's father, Arnold Roth experienced and continues to experience severe and unconscionable mental anguish, bereavement, and unbearable grief as a result of his daughter's heinous murder and tragic death and corresponding loss of society and comfort. In his Declaration, which the Plaintiffs attach hereto as Exhibit A and incorporate herein by reference, are details of Mr. Roth's anguish and continued grief as a result of the death of his daughter "Malki".

Mr. Roth's Declaration describes how he spoke at a United Nations special conference in 2008 devoted to understanding terrorism's victims.  Ex. A, ¶ 9.  In addressing the plenum, he chose to speak to Malki, and had "a vivid and very painful image of her in my head" as he spoke. *Id.*  Though some may think of this as cathartic, it did not feel that way to Mr. Roth, and never has. *Id.*  Bringing Malki to mind, and especially in the presence of people who plainly fail to empathize with the tragedy that her death represents (and in specific cases, sympathize heart and soul with her killers) is never easy or pain-free for Mr. Roth.  *Id. 11.*  Despite the many years that have passed, Mr. Roth cannot shake off the pervasive sense of guilt for having failed her by not preventing her violent death.  Ex. A, ¶ 11.

Mr. Roth's Declaration further details the extreme anguish that he suffered the night of August 9, 2001, when his daughter was missing and he and his wife began to suspect she may have been present at the Sbarro pizzeria. Ex. A. ¶ 19.  His declaration further provides testimony of the bereavement support and psychological counseling he has received.  Ex. A. ¶ 20.  Consequently, Mr. Roth, should receive the baseline solatium damages award of $5 million and

such significant upward adjustment as the Court deems proper for the unbearable loss which Mr. Roth has suffered as a result of Malki's murder.

2. Frimet Roth

In the present case, Malka Roth's mother, Frimet Roth experienced and continues to experience mental anguish, bereavement, and unbearable grief as a result of her daughter's heinous murder and tragic death and corresponding loss of society and comfort. In her Declaration which the Plaintiffs attach hereto as Exhibit B and incorporate herein by reference, are details of Mrs. Roth's anguish and continued grief as a result of the death of her daughter, Malki. It is not overstating matters to say that Mrs. Roth is in a permanent state of mourning for her child.  Ex. B.

Since Malki's murder, Mrs. Roth has found it very difficult to discuss the emotional impact and effect Malki's death has had on her.  Ex. B, ¶ 7. She does often write, and very occasionally speaks publicly, mainly in connection with the anniversary of Malki's death or in relation to the actual or threatened release from prison of murderous terrorists as part of political deals.  *Id.*  Even today, thirteen years after the murder of her daughter, Mrs. Roth still cannot even visualize Malki, look at her photograph, touch a possession of hers, read her writing, or see her friends, without feeling anguish.  Ex. B, ¶ 8.  The pain is so intense that in order to function, she often feels obliged to suppress memories of her daughter.  *Id.*  Providing her Declaration in this case has been an unbearable heart-wrenching experience.  Ex. B, ¶ 13.  It has been particularly difficult because of the politically negotiated release of Malki's murderer from an Israeli prison as part of a prisoner exchange.   Ex. B, ¶ 14.  As Mrs. Roth eloquently states in her Declaration, "[t]he injustice done to our child's memory gnaws at me relentlessly every minute of every day." Ex. B, ¶ 15.

Consequently, Frimet Roth should receive the baseline solatium damages award of $5 million and such significant upward adjustment as the Court deems proper for the unbearable loss which Mrs. Roth has suffered as a result of Malki's murder.

3. <u>Estate of Malka Chana Roth</u>

The Estate of Malka Roth has been opened in Israel and is represented in this action by its co-Administrators, Arnold Roth and Frimit Roth. *See* Ex. A, ¶ 2, and the Letters of Inheritance (being the closest equivalent in Israel to Letters of Administration) as are attached hereto as Exhibit C. Economic damages may be awarded to the Plaintiff pursuant to 28 U.S.C. § 1605A(c). Economic damages are available to compensate the estate of the deceased for the victim's lost earning capacity. *Valore*, 700 F. Supp. 2d at 83 (explaining that estates of those who did not survive can recover economic losses stemming from wrongful death of the decedent). Plaintiffs have provided evidence of Malka Roth's lost earnings capacity by submitting the expert report of Dr. James Markham, an expert in the field of forensic economics. *See* Expert Report of Dr. James Markham, attached hereto as Exhibit D. Dr. Markham has previously been accepted by courts in this District as an expert in the field of forensic economics. *See Ellis v. Islamic Republic of Iran*, 05-cv-220 (RCL) (D.D.C); *Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 78 (D.D.C. 2011); and *Buonocore v. Great Socialist People's Libyan Arab Jamahiriya,* 06-cv-727 (JMF), 2013 WL 351546 (D.D.C. Jan. 29, 2013) *amended sub nom. Estate of Buonocore v. Great Socialist People's Libyan Arab Jamahiriya*, 06-cv-727 JMF, 2013 WL 653921 (D.D.C. Feb. 12, 2013).

In his report, Dr. Markham reviews the methodology of calculation of economic loss. Mr. Roth has also provided testimony in his Declaration as to the vocational achievements of himself and his other children on which Dr. Markham relies. Ex. A, ¶ 22. Dr. Markham

7

concludes that assuming Malka Roth lived her life and was employed in Israel the total economic loss ranges from $694,441 to $1,191,019, net of personal maintenance, as reflected in the Tables 1-4, and Summary Table attached to his Report. Ex. D.  Alternatively, Dr. Markham's report provides that assuming Malka Roth lived her life in the United States and was employed in the United States, the total economic loss range would be $1,020,276 to $1,750,112 net of personal maintenance, as reflected in Tables 1A-4A. Ex. D.  As Dr. Markham explains, this differential is explained by taking into account an adjustment for relative earnings between Israel and the U.S. *Id*.

Accordingly, the Court should find Dr. Markham's report acceptable and admissible as an expert opinion, reliable and a proper basis for awarding economic damages as discussed therein, and in such amounts as the Court may determine to be just and proper under the circumstances.

4. <u>Haya-Elisheva Roth</u>

Haya-Elisheva Roth is the disabled younger sister of Malka Chana Roth.  She is entitled to solatium damages because as explained in Mr. Roth's declaration, Haya-Elisheva and Malki maintained a close bond, and despite her severe disabilities Haya-Elisheva has experienced a profound emotional loss.  When Haya-Elisheva was at home and not in the hospital, after Malki would return from long days of school followed by youth group activities she always found time to sit with Haya-Elisheva, to speak to her or to sing to her, and to carry her to bed with her, holding her close so that Haya-Elisheva would know the pleasure of being close to someone who loved her unconditionally even though she was unable to give any sign of that appreciation.  Ex. A, ¶ 26.

Consequently, Haya-Elisheva should receive the baseline solatium damages award of $2.5 million and such upward departure as the Court deems appropriate.

5. <u>Rivka Roth Rappaport</u>

This Court should also find that Rivka Roth Rappaport, Malki's younger sister, is entitled to solatium damages because she experienced and continues to experience mental anguish, bereavement, and unbearable grief as a result of her sister's death and corresponding loss of society and comfort.

In her Declaration attached hereto as Exhibit E, which the Plaintiffs incorporate herein by reference, Rivka describes the relationship she had with her sister, Malki. She explains that she and Malki shared a bedroom, went to the same school and youth group, and did lots of other things together, just as sisters do. Ex. E, d 8.

Rivka also described the intense emotional trauma she suffered on the day her sister Malka was murdered. Rivka describes that immediately after the bombing, several members of their family began the process of locating each other member of the family by phone. Ex. E, ¶ 14. Within an hour, it was evident that Malka could not be located. *Id*. All the members of the family remained in close contact throughout the afternoon and evening and night, mostly from within the family home, where Rivka was. *Id*. Rivka describes how difficult it was to wait the hours to find out what had happened to Malka. *Id*. Rivka still recalls crying and that "many of my siblings and parents being very emotionally distraught as well". *Id.*

Rivka further explains that since her sister was murdered she has experienced emotional trauma and physical pain as a result of the shock of Malka's murder and the loss of her company and companionship. Ex. E, ¶ 16. For example, following Malka's death she had difficulty getting back to school, especially because she had just started a new high school, the one in which Malki had been a student, and she felt like Malki's presence was everywhere. *Id.* She went to a psychologist once or twice, but didn't continue because "as a teenager I was turned off

9

by the idea of going to psychological therapy". *Id.*  Rivka's Declaration makes clear that as result of her sister's death, she continues to suffer grievously today.  Ex. E, ¶ 17.

Consequently, Rivka should also receive the baseline solatium damages award of $2.5 million and such significant upward adjustment as the court deems proper for the unbearable loss which Rivka has suffered as a result of Malki's murder.

6.  <u>Zvi Nehemia Roth</u>

This Court should also find that Zvi Nehemia Roth, Malki's older brother, is entitled to solatium damages because he experienced and continues to experience mental anguish, bereavement, and unbearable grief as a result of his sister's death and corresponding loss of society and comfort.

In his Declaration attached hereto as Exhibit F, which the Plaintiffs incorporate herein by reference, Zvi describes the relationship he had with his sister, Malki.  He explains that he and Malki were very close. Ex. F, ¶ 7.  He explains that they would play together often, go to the swimming pool together, and generally spend lots of time together.  *Id.*

Zvi describes the intense emotional trauma he suffered on the day his sister Malka was murdered. Ex. F, ¶ 13.  Like his sister Rivka, Zvi recalls that immediately after the bombing, several members of their family began the process of locating each other by phone. *Id.*  Within an hour, it was evident that Malka could not be located. *Id.*  All the members of the family remained in close contact throughout the afternoon and evening and night, mostly from within the family home, where Zvi was.  *Id.*  Zvi also describes how difficult it was to wait the hours to find out what had happened to Malka.  *Id.*

Zvi further provides statements that he has experienced emotional trauma and physical pain as a result of the shock of Malka's murder and the loss of her company and companionship.

Ex. F, ¶ 15. Following Malka's death he had difficulty studying and socializing. *Id.* He received grief counseling from both a psychologist and from a social worker. *Id.* Zvi concludes that his life will never be the same without his sister Malka. Ex. F, ¶ 16.

Consequently, Zvi should also receive the baseline solatium damages award of $2.5 million and such significant upward adjustment as the Court deems proper for the unbearable loss which Zvi has suffered as a result of Malki's murder.

7. <u>Shaya Elazar Roth</u>

This Court should also find that Shaya Elazar Roth, Malki's older brother, is entitled to solatium damages because he experienced and continues to experience mental anguish, bereavement, and unbearable grief as a result of his sister's death and corresponding loss of society and comfort.

In his Declaration attached hereto as Exhibit G, which the Plaintiffs incorporate herein by reference, Shaya describes the relationship he had with his sister, Malki. He explains that he and Malki were very close. Ex. G, ¶ 7. Shaya recalls that one of his favorite memories of Malka was a hike he took with her, in the summer of 2001, shortly before her death. Ex. G, ¶ 11.

Shaya describes the intense emotional trauma he suffered on the day his sister Malka was murdered. Ex. G, ¶ 14. When it was evident that Malka could not be located, Shaya "escorted [his] mother to the local hospital to search for Malka, with the tension and fear rising as time went by and [they] found nothing". *Id.* Later that night, Shaya and his older brother Pinchas traveled to the government pathology center at Abu Kabir, after being told there was a body that might match Malka's description. Ex. G, ¶ 15. Shaya continues to recall the terrible deliberation while looking at her body lying on the clinic's bed, knowing it was her but hesitating to declare it and making it official and all the while having a glimmer of doubt or hope that he might be

making a mistake and that "Malka is alive somewhere". *Id.* He similarly recalls having to call home to say he had found her body – and talking to his father, while hearing his mother crying in the background. *Id.*

Shaya continues to experience emotional trauma and physical pain as a result of the shock of Malka's murder and the loss of her company and companionship, love and affection. Ex. G, ¶ 16. Consequently, Shaya should also receive the baseline solatium damages award of $2.5 million and such significant upward adjustment as the Court deems proper forthe unbearable loss which Rivka has suffered as a result of Malki's murder .

8. <u>Pinchas Moshe Roth</u>

This Court should also find that Pincha Moshe Roth, Malki's older brother, is entitled to solatium damages because he experienced and continues to experience mental anguish, bereavement, and unbearable grief as a result of his sister's death and corresponding loss of society and comfort.

In his Declaration attached hereto as Exhibit H which the Plaintiffs incorporate herein by reference, Pinchas describes the relationship he had with his sister, Malki. He explains that since Malki's death he has found it very difficult to discuss the emotional impact and effect that her death has had on him. Ex. H, ¶ 6.

On the night Malki died, immediately after the explosion at the Sbarro restaurant was reported, several members of the Roth family began the process of locating each other member of the family by phone. Ex. H, ¶ 8. Because Malka could not be located, Pinchas visited the information center at the Bikur Holim hospital, located a few yards from the scene of the bombing, but they had no information about Malka. *Id.* As the day turned to night, Pinchas travelled home and joined the rest of his family in frantically trying to find some information

about where she might be. *Id.* Around 2:00 AM on Friday morning, August 10, 2009, Pinchas and his brother Shaya traveled to the government pathology center at Abu Kabir to see if they could get any information regarding their sister. Ex. H, ¶ 9. The brothers then shared the gruesome and unbearable task of identifying their sister's body and notifying their parents of her death in the terrorist attack. *Id.*

Since Malka's murder, Pinchas has experienced emotional trauma and physical pain as a result of the shock and the loss of her company and companionship, love and affection. Ex. H, ¶ 10. Following Malka's death, Pinchas had trouble moving around in public places among strangers, for fear that one of them might be carrying a bomb. *Id.* He participated in individual and group therapy for several years. *Id.*

Consequently, Pinchas should also receive the baseline solatium damages award of $2.5 million and such significant upward adjustment as the Court deems proper for the unbearable loss which Pinchas has suffered as a result of Malki's murder.

9.      Pesia Roth

This Court should also find that Pesia Roth, Malki's younger sister, is entitled to solatium damages because she experienced and continues to experience mental anguish, bereavement, and unbearable grief as a result of her sister's death and corresponding loss of society and comfort.

In her Declaration attached hereto as Exhibit I, which the Plaintiffs incorporate herein by reference, Pesia describes the relationship she had with her sister, Malki. She explains that she and Malki were very close. Ex. I, ¶7. Pesia describes that the hardest part about Malka's death is not having her around in her day to day life and that without Malki there is a "gaping hole" in their family. Ex. I, ¶8.

Pesia also described the intense emotional trauma she suffered on the day her sister Malka was murdered. Pesia describes that immediately after the bombing, several members of their family began the process of locating each other member of the family by phone. Ex. I, ¶¶13-14.

Pesia further explains that since her sister was murdered she has experienced emotional trauma and physical pain as a result of the shock of Malka's murder and the loss of her company and companionship. Ex.I, ¶15. For example, following Malka's death she had difficult times in elementary and middle school and sought psychological counseling then and since to help her deal with the trauma. Id. Pesia's Declaration makes clear that as result of her sister's death, she continues to suffer grievously today. Ex. I, ¶16.

Consequently, Pesia Roth should also receive the baseline solatium damages award of $2.5 million and such significant upward adjustment as the Court deems proper and the unbearable loss which Pesia has suffered as a result of Malki's murder.

  B.  <u>Punitive Damages</u>

Each of the individual Plaintiffs, Arnold Roth, Frimet Roth, Haya-Elisheva Roth, Pesia Roth, Rivka Roth Rappaport, Zvi Nehemia Roth, Shaya Elazar Roth, Pinchas Moshe Roth and the Estate of Malka Chana Roth are entitled to punitive damages pursuant to 28 U.S.C. § 1605A against the Islamic Republic of Iran.

Punitive damages serve to "punish and deter the actions for which they are awarded." *Murphy*, 740 F. Supp. 2d at 80. Four factors determine the amount of punitive damages: "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." *Id*. Punitive damage awards under the FSIA serve multiple purposes:

> [b]y creating these rights of action, Congress intended that the Courts impose a substantial financial cost on states which sponsor terrorist groups whose activities kill American citizens. This cost functions both as a direct deterrent, and also as a disabling mechanism: if several large punitive damage awards issue against a foreign state sponsor of terrorism, the state's financial capacity to provide funding will be curtailed.

*Flatow*, 999 F. Supp. at 33.

The court in previous unrelated actions has determined and awarded punitive damages against the Islamic Republic of Iran for its sponsorship of terrorism under FSIA actions based on a pronounced formula. *See Valore*, 700 F. Supp. 2d at 88. The court in *Valore* determined a "multiplicand," the amount of Iran's annual expenditures on terrorist activities, which it multiplied by a "multiplier," the factor by which the multiplicand should be multiplied to produce the "desired deterrent effect." *Id*. The court has previously found that Iran spent $25,000,000-$50,000,000 on material support to Hamas in the 1990s. *Estate of Botvin v. Islamic Republic of Iran,* 873 F. Supp. 2d 232, 238 (D.D.C. 2012); *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13, 19 (D.D.C. 2002) ("Notwithstanding the destructive purposes and objectives of HAMAS, the Islamic Republic of Iran gave the organization at least $25–$50 million in 1995 and 1996, and also provided other groups with tens of millions of dollars to engage in terrorist activities"). The multiplier is then determined. *Valore*, 700 F. Supp. 2d at 88.

The Court has previously considered "multipliers" ranging between three (3) and ten (10). In *Estate of Heiser v. Islamic Republic of Iran* and *Flatow*, the court used a multiplier of three (3), reasoning that this was the minimum multiplier to deter Iran from terrorist activities. *Estate of Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d 20, 30 (D.D.C. 2009); *Flatow*, 999 F. Supp. at 32. More recently, however, the court increased the multiplier "floor" to (5) as a response to Iran's increased participation in its terrorism lawsuits, rationalizing that it would send a greater message to Iran to end their rampant support of terrorism, citing the "continuing

15

need to punish and deter Iran from its increasing support of terrorism." *Valore*, 700 F. Supp. 2d at 89-90. The court has also supported the need for high punitive damages against Iran under this formula based on the character of their acts and extent of harm intended. *Bodoff v. Islamic Republic of Iran*, 424 F. Supp. 2d 74, 88 (D.D.C. 2006). In *Bodoff*, the court awarded high punitive damages under this formula in part because Iran supported a terrorist attack against a civilian bus, which was described by the court as extremely heinous, and intended to inflict "maximum pain and suffering on innocent people." *Id*. at 89.

In the present case, Iran supported the terrorist massacre at a pizza parlor frequented by students on August 9, 2001 when a human bomb dispatched by the FTO, Hamas, exploded in the Sbarro pizza restaurant, located in the center of Jerusalem, Israel, at one of its busiest intersections. Fifteen year-old Malki was one of the fifteen people, mostly children, murdered in that attack. 130 others were injured, dozens of them grievously. This act was every bit as heinous and outrageous, if not more so, than the attack in *Bodoff*, and inflicted "maximum pain and suffering on innocent people." Furthermore, as evidenced by recent cases against Iran and according to the U.S. Department of State's Country Reports on Terrorism, Iran is not ceasing its support for terrorist activities, which are becoming increasingly heinous. U.S. Dep't of State, Country Reports on Terrorism 2011, at 171-173 (2012) (available at http://www.state.gov/documents/organization/195768.pdf).[4]

Iran must be severely punished to deter its continued and ongoing support of terrorism. In order to accomplish this in the present case, the multiplicand should be not less than $50 million, the highest number in the estimated range Iran spent on Hamas in the 1990s. The multiplicand should be multiplied by a multiplier between three (3) and ten (10) times. Plaintiffs request the

---

[4] The Court previously relied on the 2008 version of this Report in *Wultz v. Islamic Republic of Iran*. 864 F. Supp. 2d at 41-42.

Court utilize a multiplier of ten (10) considering the particularly heinous nature of this attack. In making this request, Plaintiffs recognize that this is an increase from the multiplier of five (5) used in *Valore*, and that such an award of $500 million dollars for an attack upon a group of young people gathering at a highly frequented social spot in the heart of Jerusalem is determined by the Court to have been unconscionable, unforgivable and meriting the highest possible assessment of punitive damages, designed to punish and deter. Only an award of such magnitude would send a message to Iran that this Court and the United States of America will not tolerate Iran's continued sponsorship of terrorism and murder.[5]

      The increased multiplier will further continue the trend of increasing punitive punishment for Iran's terrorist activities (as evidenced by the increase of the multiplier from three (3) to five (5) in *Valore*) and the proposed multiplier of ten (10) in the instant action will ensure that the Islamic Republic of Iran is sent the message that this Court and the United States of America will stand with American victims of Iranian terrorism and will do everything within its power to punish Iran and to deter its continued and ongoing sponsorship of terrorism against Americans and humanity; the more the Islamic Republic of Iran participates in terrorism, the more it must and will be fiscally punished. Such an award would contribute to the necessary effort of the United States to cripple Iran's ability to fund terrorism by making an impact on the terrorism

---

[5] It should be noted that in the Beirut bombing cases under the FSIA that have come before this Court, punitive damages were capped at a ratio of 3.44 to each dollar of compensatory damages. *Murphy*, 740 F. Supp. 2d 82-83. The court reasoned in those cases that "[r]ecurrent awards in case after case arising out of the *same facts* can financially cripple a defendant, over-punishing the same conduct through repeated awards with little deterrent effect." *Id.* at 81 (emphasis added). The present case is different and should not require the 3.44 ratio cap because although the Greenberg plaintiffs received an award of damages against the Islamic Republic of Iran, it predated the enactment of 28 U.S.C. § 1605A and accordingly, as to punitive damages pursuant thereto, this is the first and only case arising out of these particular facts and does not run the risk of over-punishing the defendant for the same acts. Should the Court, however, determine to apply punitive damages as a multiplier of compensatory damages, rather than of the terrorism budget, Plaintiffs pray this Court will award substantial punitive damages based upon the aggregate compensatory damages awarded by this Court to the Roth Plaintiffs, in order to send the strongest possible message of punishment and deterrence to the Islamic Republic of Iran in keeping with this Court's long-standing commitment to speak out on behalf of the innocent American victims of Iranian terrorism.

allocations of this oil-rich state, and hopefully will serve to prevent the deaths of other innocent adults and children. As Iran continues to pursue the policy of actively encouraging and supporting terrorism, notwithstanding previous awards, the price for continued support of terrorism should be increased until the awards are seen to have a material impact and real deterrent effect upon the Islamic Republic of Iran, continues to be on the US Department of State list of State of Sponsors of Terror..

## CONCLUSION

WHEREFORE, for the reasons set forth above, Plaintiffs respectfully request that pursuant to 28 U.S.C. § 1605A, this Court enter default judgment in their favor and find liability of the Defendant for the terrorist attack that murdered Malka Chana Roth, and award each of the Plaintiffs damages for their solatium loss under 28 U.S.C. § 1605A(c); and to the Estate of Malka Roth for her economic loss; and to each of the Plaintiffs for such amount as the Court deems appropriate and just as an assessment of punitive damages against the Iranian Defendants. Plaintiffs further request that Court enter Judgment in favor of the Plaintiffs, and award them prejudgment interest, upward adjustments, and punitive damages, with interest thereon as allowed by law, for all of which execution should be allowed in the interests of justice.

Dated: October 2, 2014                     Respectfully submitted,

                                                      HEIDEMAN NUDELMAN
                                                       & KALIK, P.C.
                                                      1146 19th Street, N.W., 5th Floor
                                                      Washington, DC 20036
                                                      Telephone:  202-463-1818
                                                      Telefax:     202-463-2999

                                                      By: _/s/Richard D. Heideman_____
                                                            _/s/ Tracy Reichman Kalik_____

                                                     Richard D. Heideman (No. 377462)

        Noel J. Nudelman (No. 449969)
        Tracy Reichman Kalik (No. 462055)

Steven R. Perles (No. 326975)
Edward MacAllister (No. 494558)
PERLES LAW FIRM, PC
1146 19th Street, N.W., 5th Floor
Washington, DC 20036
Telephone: 202-955-9055
Telefax:    202-955-3806